IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:20-CV-00621-M

RYAN LEBLANC,               )
                           )
        Plaintiff,          )
                           )
v.                          )               ORDER
                           )
CITY OF SANFORD, a Municipal )
Corporation in the State of North Carolina, )
MACK JAMES THOMAS, II, a/k/a JAMIE )
THOMAS, in his individual capacity, )
RONALD V. YARBOROUGH, in his )
individual capacity, and    )
ERIC PATE, in his individual capacity, )
                           )
        Defendants.         )

This matter is before the court on Defendants' Motion to Dismiss pursuant to Fed. R. Civ.

P. 12(b)(6) [DE 13]. Defendants contend Plaintiff fails state plausible claims for relief and, thus,

they are entitled to qualified immunity for Plaintiff's due process claim and to public official

immunity for Plaintiff's libel claim. Plaintiff counters that his allegations, taken as true, are

sufficient to state plausible claims against the Defendants. For the reasons that follow, Defendants'

motion is denied.

## I.    Background

### A.    Plaintiff's Factual Allegations

The following are factual allegations (as opposed to statements of bare legal conclusions,

unwarranted deductions of fact, or unreasonable inferences) made by the Plaintiff in the operative

Complaint (DE 1-1), which the court must accept as true at this stage of the proceedings pursuant

to *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

Plaintiff was employed as a police officer with Defendant City of Sanford from May of 2007 until October 23, 2019. During his employment, Plaintiff received performance evaluations reflecting that he met or exceeded job expectations. In September 2016, Plaintiff was promoted to the rank of Sergeant. Plaintiff's last performance review in March 2019 noted he was "exemplary" and stated under the "Relationships" category that "Sergeant LeBlanc has a polite and calming demeanor about him when dealing with citizens. He seeks the best solution to the citizen's situation that is most beneficial to all parties involved. Sergeant LeBlanc is even-tempered and never argumentative with his fellow officers or supervisors."

In July 2019, Plaintiff was off duty when he was alerted to a vehicle chase involving the Sanford Police Department. Plaintiff assisted in the effort, which was successful in apprehending the fleeing suspect. However, Plaintiff was cited with two violations of department policies during the operation and was demoted from Sergeant to Patrol Officer III. Plaintiff was also placed on probation for six months.

On the evening of October 22, 2019, Plaintiff was in his patrol car parked at the lower end of the police department's parking lot. He was having technical difficulties with his computer and yelled in frustration. Plaintiff was approximately 300 feet from any personnel and was not yelling at anyone. Detective Alan Schlitz texted Plaintiff and asked him if everything was okay. Plaintiff texted back something to the effect of "well, I haven't killed anyone yet." Plaintiff believes Detective Schlitz conveyed the text message to Plaintiff's direct supervisor, Captain Jason Hendley.

The following day, October 23, 2019, Plaintiff received a telephone call from Captain Hendley who discussed the text message with him. Plaintiff expressed his frustration with his situation at Sanford Police Department and Captain Hendley advised him that it would be in his

best interest to resign. Plaintiff was informed that if he resigned, the incident regarding the text message would not be included on the Form F-5B ("Affidavit of Separation Law Enforcement Officer"), which is submitted to the Criminal Justice Education Training and Standards Commission ("the Commission") when a police officer is separated from employment. A copy of the Form F-5B must be retained in the police department's personnel file.

On October 28, 2019, Defendant Yarborough, Chief of the Sanford Police Department, submitted a Form F-5B regarding Plaintiff's employment separation to the Commission. Plaintiff believes that Defendants Chief Yarborough, Major Thomas, and Captain Pate were responsible for the following language that appeared on the Form F-5B:

> Ryan LeBlanc was involved in a vehicle chase in July 2019 and was a Patrol Sergeant with the Selective Enforcement Unit. Ryan LeBlanc violated department policies 3.7.3 Body Worn Camera, and 4.3 Firearms, Safe Handling and Judgment with use of Firearms, LeBlanc used reckless and poor judgment in the use of his firearm causing damage in a city vehicle. LeBlanc was demoted from Sergeant to Patrol Officer III, reassigned to a patrol shift, and placed on six months' probation. Since LeBlanc received disciplinary action, he has used threatening language towards fellow employees, and was advised by his supervisor to consider resignation.

Plaintiff was not provided a copy of the Form F-5B and was not aware that he had been accused of using "threatening language towards fellow employees."

When Plaintiff subsequently attempted to find employment with another law enforcement agency in North Carolina, he discovered the existence of the allegation that he had used threatening language towards fellow employees in the Form F-5B. Because of this allegation, Plaintiff has been unable to secure employment with any other law enforcement agency. After Plaintiff's resignation on October 23, 2019, he remained unemployed until February 17, 2020, at which time he took a position in a field unrelated to law enforcement for which he is paid substantially less than his salary as a police officer.

B.    Procedural History

On October 27, 2020, Plaintiff initiated this action in the Superior Court for Harnett County, North Carolina. DE 1-1. Defendants removed the action to this court on November 20, 2020 based on the court's federal question jurisdiction pursuant to 28 U.S.C. § 1331. *See* DE 1 at ¶ 2. In lieu of an Answer, Defendants filed the present motion on December 28, 2020 seeking dismissal for the Plaintiff's purported failures to allege a liberty interest and that the challenged statement—he used threatening language toward fellow officers—was false for the due process claim, and to allege actual malice and that the challenged statement was false for the libel claim. Plaintiff counters that his allegations, taken as true, plausibly assert that the statement was false, that he was constructively discharged for the due process claim, and that Defendants were motivated by actual malice for the libel claim. Defendants reply, contending that prevailing law demonstrates dismissal is proper.

## II.    Legal Standards

When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all of the well-pleaded factual allegations contained within the complaint and must draw all reasonable inferences in the plaintiff's favor, *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017), but any legal conclusions proffered by the plaintiff need not be accepted as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The *Iqbal* Court made clear that "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.

To survive a Rule 12(b)(6) motion, the plaintiff's well-pleaded factual allegations, accepted as true, must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *Twombly*'s plausibility standard requires that a plaintiff's well-pleaded factual allegations "be enough to raise a right to relief above the speculative level," i.e., allege "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Id.* at 555–56. A speculative claim resting upon conclusory allegations without sufficient factual enhancement cannot survive a Rule 12(b)(6) challenge. *Iqbal*, 556 U.S. at 678–79 ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2)); *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) ("'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 557)).

## III. Analysis

As noted, Defendants removed this action based on the court's federal question jurisdiction; therefore, the court will address first Plaintiff's federal claim then, if necessary, determine whether jurisdiction exists over the state law claim and, if so, evaluate whether that claim should be dismissed.

### A. Procedural Due Process Claim

To state a plausible procedural due process claim, "a plaintiff must first identify a protected liberty or property interest and then demonstrate deprivation of that interest without due process of law." *Reape v. Stackley*, 723 F. App'x 181, 182 (4th Cir. 2018) (quoting *Martin v. Duffy*, 858 F.3d 239, 253 (4th Cir. 2017), *cert. denied*, —— U.S. ——, 138 S. Ct. 738, 199 L.Ed.2d 605 (U.S.

5

2018)).  Relevant here, a Fourteenth Amendment "liberty interest is implicated by public announcement of reasons for [a municipal] employee's discharge." *Sciolino v. City of Newport News, Va.*, 480 F.3d 642, 645–46 (4th Cir. 2007) (quoting *Johnson v. Morris*, 903 F.2d 996, 999 (4th Cir. 1990)).  Plaintiff alleges he had a liberty interest in his reputation and choice of occupation,[1] and Defendants infringed on that interest by failing to provide him notice and an opportunity to be heard before submitting the Form F-5B containing an allegedly false statement that Plaintiff had used threatening language toward fellow employees.  Defendants contend that Plaintiff fails to state a plausible due process claim and the individual Defendants assert qualified immunity in defense of this claim.

Qualified immunity shields government officials performing discretionary functions from individual-capacity liability for civil damages under 28 U.S.C. § 1983, "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) (quoting *Wilson v. Layne*, 526 U.S. 603, 609 (1999)).  Government officials sued in their personal capacities are entitled to the defense of qualified immunity "unless a § 1983 claim satisfies the following two-prong test: (1) the allegations underlying the claim, if true, substantiate the violation of a federal statutory or constitutional right; and (2) this violation was of a 'clearly established' right 'of which a reasonable person would have known.'" *Id.* (quoting *Mellen v. Bunting*, 327 F.3d 355, 365 (4th Cir. 2003)).

---

[1] Typically, municipal employees have a property interest in their continued employment under the Fourteenth Amendment; however, here, Plaintiff apparently recognizes his status as "probationary" at the time of his employment separation and, thus, identifies the protected liberty interests allegedly infringed by Defendants as reputation and choice of occupation. *See Sciolino,* 480 F.3d at 645 ("as a probationary employee, [plaintiff] has no protected 'property' interest in his employment with the City").

1. *Does Plaintiff State a Plausible Due Process Claim?*

To establish the first prong in this case, Plaintiff "must allege that the charges against him: (1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false. *Sciolino*, 480 F.3d at 646 (citing *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 n.5 (4th Cir. 1988)). Defendants assert that Plaintiff fails to plausibly allege the third and fourth prongs. Memo. at 7.[2] Again, the "charge" at issue in this case is that Plaintiff used threatening language toward fellow employees.

First, Defendants argue the Plaintiff's allegations reflect that he resigned from employment and, therefore, Plaintiff cannot plausibly state that the charge was "made in conjunction with his termination or demotion." Plaintiff counters that the Fourth Circuit recognizes an *involuntary* resignation satisfies this prong if it was "induced by an employee's reasonable reliance upon an employer's misrepresentation of a material fact concerning the resignation," and that, in this case, his supervisor told him it would be in his best interest to resign and informed him, falsely, that if he resigned, the charge would not be included on the Form F-5B. Resp. at 7. Defendants reply that Plaintiff alleges neither a "misrepresentation" nor reasonable reliance. Reply at 3-6.

In *Stone*, the plaintiff alleged that his resignation from public employment was involuntary and he was denied due process when his employer deprived him of an opportunity to respond to allegations of malfeasance. 855 F.2d at 171-72. The Fourth Circuit found that resignations are "involuntary" and thus, "deprivations" for purposes of the Fourteenth Amendment in two

---

[2] Defendants note that, because the third and fourth prongs are not met, the court need not address whether Plaintiff meets the second prong. The court finds that Plaintiff does, in fact, meet the second prong by alleging that prospective employers of law enforcement officers to which he applied for employment could, and did, access the Form F-5B. Compl. at ¶ 29.

circumstances, only one of which is implicated here: "where obtained by the employer's misrepresentation or deception." *Id.* at 174.[3] The court instructs that, under this theory:

> a resignation may be found involuntary if induced by an employee's reasonable reliance upon an employer's misrepresentation of a material fact concerning the resignation. *See Scharf* [*v. Dep't of the Air Force*], 710 F.2d [1572,] 1575 [(Fed. Cir. 1983)]. A misrepresentation is material if it concerns either the consequences of the resignation, *see id.* (effect on accumulated sick leave) or the alternative to resignation, *see Covington* [*v. Dep't of Health & Human Serv.*], 750 F.2d [937,] 942 [(Fed. Cir. 1984)] (omission to explain right to be reassigned if resignation declined). The reliance must be reasonable under the circumstances. *Scharf*, 710 F.2d at 1575.

*Id.* In *Stone*, the court found that, if it was truly made, the employer's statement that it would discharge plaintiff that same day if he did not resign immediately was a "misrepresentation of material fact" in that it contradicted applicable bylaws. *Id.* at 175.

Here, Defendants contend that Plaintiff's supervisor's promise, even if made, does not constitute a misrepresentation because it is a statement of future intent, not of a present fact. Defendants rely on the Fourth Circuit's opinion in *Zepp v. Rehrmann*, 79 F.3d 381, 386 (4th Cir. 1996), in which the court rejected on summary judgment the plaintiff's argument that he relied on a "misrepresentation" that his employer would not represent him in any civil case relating to his alleged misconduct if he refused to resign. The court found the employer's statement "one of future intent, not of existing fact" and, thus, not a misrepresentation of material fact. *Id.* While *Zepp*, on its face, may appear to apply in this case, this court finds the Fourth Circuit's opinion in *Ridpath*, 447 F.3d at 311, more closely analogous.

In *Ridpath*, the plaintiff alleged he was a director of compliance in a university athletics department, who reported to the NCAA "academic fraud" by certain football players, then

---

[3] The second is "where forced by the employer's duress or coercion" (*see id.*); the Plaintiff does not argue he was "forced" to resign under such circumstances.

8

vigorously defended the university in the ensuing investigation of fraud and other rules violations. *Id.* at 300-01. Nevertheless, not long after a hearing on the matters, the plaintiff agreed to be reassigned to a position (for which he was not qualified) based in part on a promise—later determined to be false—that his reassignment would not be reported as a punitive "corrective action" to the NCAA and the public. *Id.* at 301. Under a Rule 12(b)(6) analysis, the *Ridpath* court took as true plaintiff's allegations supporting the proposition that his "reassignment" was in essence a demotion and found "[t]he circumstances alleged here—including the ruse that Ridpath would not be blamed for the NCAA rules violations if he agreed to the reassignment—are squarely within the *Stone* standard" for a misrepresentation of material fact. *Id.* at 311.

The opinion in *Ridpath* is more analogous and, thus, applicable in this case for the following reasons: (1) the opinion reviews a Rule 12(b)(6) analysis, (2) the alleged circumstances were similar in that both plaintiffs were induced by the employer to accept an adverse action (resignation/demotion) by a promise to refrain from punitive action, and (3) it can be reasonably inferred from the alleged circumstances in both cases that the promises were not intended to be fulfilled at the time they were made.[4]

Applying *Ridpath* to this case and taking the allegations as true, the court finds Plaintiff plausibly alleges a misrepresentation of material fact for purposes of demonstrating an involuntary resignation. Plaintiff's allegations reflect that, after a twelve-year auspicious tenure with the Sanford Police Department in which he was characterized in a recent performance review as "polite," "calming," "even-tempered," and "never argumentative with his fellow officers or

---

[4] As noted below, Defendants argue the Plaintiff did not reasonably rely on any misrepresentation because he knew that his supervisor did not have the authority to make such a promise. In so arguing, the Defendants imply that Plaintiff's supervisor also knew he did not have the authority to promise Plaintiff that the City would refrain from including the text message in the Form F-5B.

supervisors," Plaintiff received a call from his supervisor who admonished Plaintiff for yelling out in frustration while working on his vehicle's computer in the station's parking lot and texting in response to a nearby detective's question, "is everything okay?," saying "well, I haven't killed anyone yet." His supervisor told him, "it would be in your best interest to resign"—which, depending on the context, could be construed as foreboding—and promised Plaintiff that if he resigned, the matter, including the text message, would not be included in the Form F-5B. Plaintiff resigned and later discovered while seeking alternate employment in law enforcement that the Form F-5B not only was not silent with respect to the text, but Defendants construed the text unfavorably and charged Plaintiff with using threatening language toward fellow employees. The court finds these circumstances demonstrate an alleged misrepresentation of a material fact supporting an involuntary resignation pursuant to *Ridpath.*

Defendants also contend that the allegations fail to show Plaintiff reasonably relied on the misrepresentation, in that he "had no reason to believe that Captain Hendley had authority to bind the City with respect to what was put on the Form F-5B." Reply at 4-5. For support of this contention, Defendants cite the unpublished opinion in *Vinson v. Int'l Bus. Machines Corp.*, No. 1:17-CV-00798, 2018 WL 4608250, at *10 (M.D.N.C. Sept. 25, 2018), in which the plaintiff employee alleged that the employer made material misrepresentations with respect to a salary/commission incentive plan. The court found the plaintiff did not reasonably rely on misrepresentations allegedly made by his supervisors, who were not "at the highest levels of management." *Id.* Importantly, the court came to this conclusion after finding that the plan document specifically instructed participants that "[m]anagers below the highest levels of management" would have no knowledge about the company's intent to change or adopt any particular compensation plan nor the ability to change the current plan and were not in a position

to advise any employee about the current plan. *Id.* Here, the Plaintiff's allegations reveal no such instruction; moreover, the allegations do not reflect that Plaintiff had any sort of management expertise or knowledge about the structure or hierarchy of the Sanford Police Department, such that he could be instantly imputed with knowledge that his supervisor had no authority "to bind the City with respect to . . . the Form F-5B." The court rejects Defendants' argument in this respect.

Regarding Defendants' contention that Plaintiff "fails to allege when, how, or why he resigned" and, therefore, no reasonable inferences may be drawn with respect to his actual reliance on the misrepresentation, the court disagrees. Plaintiff alleges that his conversation with his supervisor about the text message occurred on October 23, 2019 (Compl. at ¶ 17) and he resigned the same day after more than twelve years with the department (*id.* at ¶ 21). The court may reasonably infer from these allegations that Plaintiff "actually" relied on the supervisor's statement.

Finally, Defendants assert that Plaintiff's allegations fail to demonstrate the charge—that he used threatening language toward fellow employees—was false. Defendants rely on the Supreme Court's opinion in *Codd v. Velger*, 429 U.S. 624 (1977), in which the Court addressed an appeal from a bench trial at which the plaintiff attempted to prove he was "stigmatized" by information in his personnel file released (with his consent) to a prospective employer. *Id.* at 626. The Court found the plaintiff failed to demonstrate that the information—i.e., he was discharged from employment with a police department when, as a trainee, he "put a revolver to his head in an apparent suicide attempt"—was false. *Id.* at 627. The Court determined that plaintiff's counsel's suggestion that "i(t) might have been all a mistake, (i)t could also have been a little horseplay" was insufficient to prove the falsity of the information. *Id.* at 628. Unlike here, the conclusion reached

in *Codd* came after a trial on the merits. Taking the allegations as true in this case and construing them in the light most favorable to Plaintiff as necessary for a Rule 12(b)(6) analysis, the court finds that the text message, "well, I haven't killed anyone yet"—depending on the factual circumstances surrounding it—may be reasonably interpreted as a simple expression of frustration or, even, a joke pertaining to Plaintiff's outburst in his vehicle. Thus, it is plausible that the charge set forth in the Form F-5B was false.

The court concludes that Plaintiff's allegations plausibly state the charge placed a stigma on his reputation with respect to future employment in law enforcement, was made public by the Defendants, was made in conjunction with Plaintiff's involuntary resignation, and was false. Whether the Plaintiff can actually prove these elements is not at issue at this early stage of the litigation. Plaintiff meets the first prong to defeat Defendants' assertion of qualified immunity.

2.    *Was Plaintiff's Right to Due Process Clearly Established?*

Plaintiff asserts that the Fourth Circuit's opinion in *Cannon v. Vill. of Bald Head Island*, 891 F.3d 489 (4th Cir. 2018) clearly establishes Plaintiff's procedural due process right in this case. Defendants counter that the factual circumstances in *Cannon* are dissimilar and, thus, the opinion does not clearly establish Plaintiff's asserted due process right.

"A 'right is clearly established only if its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 538 (4th Cir. 2017) (quoting *Carroll v. Carman*, 574 U.S. 13, 16 (2014)). In other words, the "unlawfulness of the official's conduct must be 'apparent' in 'light of pre-existing law.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Thus, to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

12

While the Plaintiff bore the burden of demonstrating a plausible due process violation, Defendants bear the burden of showing the alleged violation was not clearly established, and that they are, therefore, entitled to qualified immunity. *Mays v. Sprinkle*, 992 F.3d 295, 302 n.5 (4th Cir. 2021) ("at least in our Circuit, defendants bear the burden of showing that the violation was not clearly established") (citing *Henry v. Purnell*, 501 F.3d 374, 378 (4th Cir. 2007)).[5] "[W]here defendants raise a qualified-immunity defense at the motion-to-dismiss stage [courts] must ask whether a reasonable officer could have believed that [his or her] actions or omissions, as alleged in the complaint, were lawful (that is, the violation was not clearly established at the time). . . . If so, defendants are entitled to dismissal before discovery." *Id.* (citations omitted).

Furthermore, in analyzing whether an asserted right is clearly established, courts "ordinarily need not look any further" than decisions in "cases of controlling authority in [this] jurisdiction"—that is, "decisions of the Supreme Court, th[e Fourth Circuit C]ourt of [A]ppeals, and the highest court of the state in which the case arose." *Booker*, 855 F.3d at 538 (citations and internal quotation marks omitted). When "there are no such decisions from courts of controlling authority, [courts] may look to a consensus of cases of persuasive authority from other jurisdictions, if such exists." *Id.* at 538-39 (citations omitted).

Courts must not "define clearly established law at a high level of generality '[b]ecause the dispositive question is whether the violative nature of *particular* conduct is clearly established.'"

---

[5] This court acknowledges that, in *Cannon*, the court instructs that "a *plaintiff* must show" the two prongs necessary to overcome qualified immunity and cites *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011). 891 F.3d at 497 (emphasis added). However, in *al-Kidd*, the Supreme Court actually states, "Qualified immunity shields federal and state officials from money damages unless a plaintiff *pleads facts* showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." 563 U.S. at 735 (emphasis added). The Court did not, otherwise, mention any party's "burden" or "obligation" with respect to the showing necessary for qualified immunity. *See id.* Notably, the Court proceeded to discuss cases "found" by the court of appeals in determining whether the plaintiff's asserted Fourth Amendment right was clearly established. *Id.* at 741-43.

*Halcomb v. Ravenell*, 992 F.3d 316, 319–20 (4th Cir. 2021) (quoting *Estate of Armstrong ex rel. Armstrong v. Village of Pinehurst*, 810 F.3d 892, 907 (4th Cir. 2016) (emphasis in original)). Thus, "[t]he first step in determining whether a constitutional right is clearly established requires 'defin[ing] the precise right into which we are inquiring.'" *Id.* Based on the undisputed fact that law enforcement employers have access to prospective employees' Forms F-5B, the court identifies the due process right to be clearly established in this case as the right to notice and an opportunity to be heard prior to the submission of a false reason for an officer's employment separation in a communication directed to or accessible by prospective employers.

As noted, Plaintiff relies on the Fourth Circuit's opinion in *Cannon* to demonstrate that his procedural due process right was clearly established in October 2019. In *Cannon*, the court addressed the defendants' interlocutory appeal of the lower court's denial of qualified immunity on summary judgment with respect to the plaintiffs' First and Fourteenth Amendment claims. *See* 891 F.3d at 494. For their Fourteenth Amendment claims, the plaintiff police officers argued that the municipal defendants made public false reasons for their terminations in letters disclosed to the media, an email sent to village employees, and in each Form F-5B submitted to the Commission, without providing notice and an opportunity to be heard. *Id.* at 496. Notably, while the Fourth Circuit found that the charges made in the letters and email met the prongs necessary to demonstrate a violation of a clearly established liberty interest for a procedural due process claim, the court did not address whether the charges made in each Form F-5B satisfied the test because the defendant who completed the forms and appealed the district court's finding—Caroline Mitchell—did not raise the defense of qualified immunity before the district court and, thus, the Fourth Circuit lacked jurisdiction to hear the appeal. *See id.* at 501 n.2; *see also Cannon v. Vill. of Bald Head Island*, No. 7:15-CV-187-H, 2017 WL 2712958, at *18-*19 (E.D.N.C. June

22, 2017) (noting that only Defendant Peck asserted the defense of qualified immunity and finding he was not entitled to the defense).[6] Nevertheless, the court finds that *Cannon* clearly establishes that the submission of false reasons for an officer's termination in a communication directed to or accessible by prospective employers, without notice and a prior hearing, violates the officer's procedural due process right. *See Cannon*, 891 F.3d at 503 (even if the defendants were required by statute to disclose termination letters to the media, "there is no dispute that Defendants placed the termination letters in the Officers' personnel files, meaning that any prospective employer who sought and received the Officers' personnel files would receive the termination letters").

Taking the Plaintiff's allegations as true and construing them in his favor, the court finds at this stage of the litigation that Plaintiff has plausibly alleged a clearly established procedural due process claim against the Defendants.

---

[6] But the court also notes the Fourth Circuit's opinion in *Bryant v. Vill. of Bald Head Island, N. Carolina*, 730 F. App'x 165, 166 (4th Cir. 2018). Citing *Cannon*, the court addressed in this related case—i.e., the same claims and defendants as in *Cannon*—the defendants' appeal of the district court's order on summary judgment. *See id.* The Fourth Circuit, *inter alia*, affirmed the district court's denial of qualified immunity on the plaintiff's due process claim noting:

Although in *Cannon* we determined that Mitchell did not properly raise her qualified immunity defense as to the officers' due process claim before the district court, she did adequately raise the defense below in this case. 891 F.3d at 501 n.2. However, ***we conclude that her drafting of the Form F-5B and joint failure with Peck to offer Bryant a pre-termination hearing precludes an award of qualified immunity to Mitchell on Bryant's due process claim***. *See id.* at 501-06.

*Id.* at 166 n.* (emphasis added). While *Bryant* is unpublished, the opinion appears to announce (in 2018, *prior to* the conduct alleged in this case) how the Fourth Circuit would have ruled in *Cannon* had the court had jurisdiction to address whether the submission of a Form F-5B containing allegedly false reasons for an officer's employment separation without a prior hearing violated the officer's due process right.

B.    Libel Per Se Claim

Finding that the Plaintiff states a plausible due process claim, the court may proceed to adjudicate Plaintiff's state-law libel claim pursuant to its supplemental (or pendent) jurisdiction under 28 U.S.C. § 1367.

In North Carolina, libel per se is "a publication which, when considered alone without explanatory circumstances: (1) charges that a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt or disgrace." *Boyce & Isley, PLLC v. Cooper*, 153 N.C. App. 25, 29, 568 S.E.2d 893, 897–98 (2002). In an action for libel per se, malice and damages are presumed. *Id.* To state a claim for libel per se, a plaintiff must allege: "(1) defendant spoke or published base or defamatory words which tended to prejudice him in his reputation, office, trade, business, or means of livelihood or hold him up to disgrace, ridicule, or contempt; (2) the statement was false; and (3) the statement was published or communicated to and understood by a third person." *Cummings v. Lumbee Tribe of N.C.*, 590 F.Supp.2d 769, 774 (E.D.N.C. 2008) (citing *Friel v. Angell Care, Inc.*, 113 N.C. App. 505, 509, 440 S.E.2d 111 (1994)).

With respect to whether a publication is libel *per se*, a plaintiff must show that the publication, "when considered alone without innuendo tends to subject one to ridicule, public hatred, contempt or disgrace, or tends to impeach one in his trade or profession." *Hien Nguyen v. Taylor*, 200 N.C. App. 387, 392, 684 S.E.2d 470, 474 (2009) (quoting *Arnold v. Sharpe*, 296 N.C. 533, 537, 251 S.E.2d 452, 455 (1979)).

> The initial question for the court in reviewing a claim for libel per se is whether the publication is such as to be subject to only one interpretation. If the court determines that the publication is subject to only one interpretation, it then "is for the court to say whether that signification is defamatory." It is only after the court has decided

16

that the answer to both of these questions is affirmative that such cases should be submitted to the jury on a theory of libel per se.

*Id.* (quoting *Renwick v. News and Observer*, 310 N.C. 312, 318, 312 S.E.2d 405, 409, *cert. denied*, 469 U.S. 858 (1984)). If the "publication is capable of a defamatory meaning *and* a nondefamatory meaning, then the action for libel per se cannot lie as a matter of law." *Cummings*, 590 F. Supp. 2d at 774 (citing *Renwick*, 310 N.C. at 317) (emphasis added).

Defendants do not dispute that the charge alleged in this case suffices to demonstrate that it is both subject to only one interpretation and (if the allegations are true) defamatory. The court agrees that the allegations (if proven) support a finding of a libel *per se* (as opposed to a simple libel or libel *per quod—see Hien Nguyen*, 200 N.C. App. at 392). In this case, Defendants argue that the charge is true, which is an absolute defense to Plaintiff's claim. Defendants also contend that because Plaintiff was a "public official," he must plausibly allege the charge was made with actual malice, and he fails to do so here. Finally, Defendants assert their entitlement to a qualified privilege with respect to the Form F-5B.

1.      *Do the Allegations Demonstrate the Charge is True?*

As set forth above, the court finds that the circumstances alleged, viewed in the light most favorable to the Plaintiff, reflect the possibility that he may not have actually "used threatening language toward fellow employees." Plaintiff's October 2019 text, "well, I haven't killed anyone yet," in the context of his long-standing tenure at the police department, exemplary annual performance reviews, the characterization of Plaintiff in his most recent March 2019 review as "polite," "calming," "even-tempered," and "never argumentative with his fellow officers or supervisors," and vocal frustration with his vehicle's computer in the parking lot reflect that Plaintiff may not have directed the text at anyone, but meant it as a simple expression of frustration or, even, a joke pertaining to his outburst in his vehicle.

17

Defendants cite the opinion in *Taube v. Hooper*, 270 N.C. App. 604, 840 S.E.2d 313 (2020) in support of their argument that "a reasonable person could view Plaintiff's statement that he 'had not killed anyone yet' along with the context of Plaintiff's frustrated yell and admitted discontent with his situation at the [department] as threatening." Memo. at 11. Defendants miss the mark; Rule 12(b)(6) does not employ a "reasonable person" standard. At this stage, it matters not whether a reasonable person could view Plaintiff's statement as threatening; the question is whether *taking the allegations as true and viewing them in Plaintiff's favor*, the allegations plausibly support a claim for relief. The court concludes the allegations, taken as true and viewed in favor of the Plaintiff, plausibly state the charge was false.

2. *Is Plaintiff a "Public Official" for Defamation Purposes?*

Defendants contend that, because Plaintiff was a "public official" (as a police officer with the City of Sanford), he must allege Defendants had actual malice in submitting the Form F-5B containing the alleged false reason for his separation. Plaintiff counters that his allegations are sufficient to demonstrate the Defendants' actual malice and, alternatively, the submission was made five days after his separation and, thus, he was not a public official at the time the alleged libelous charge was made.

"In actions for defamation, the nature or status of the parties involved is a significant factor in determining the applicable legal standards." *Varner v. Bryan*, 113 N.C. App. 697, 702–03, 440 S.E.2d 295, 299 (1994) (quoting *Proffitt v. Greensboro News & Record*, 91 N.C. App. 218, 221, 371 S.E.2d 292, 293 (1988)). If a plaintiff is a "public official" and the allegedly defamatory statement concerns his official conduct, he must prove that the statement was "made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964)). "Reckless

18

disregard" requires that the speaker "in fact entertained serious doubts as to the truth of his publication." *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)).

In *Varner*, the court addressed whether the plaintiff's "public official" status ceased when his employment as a town manager was terminated. 113 N.C. App. at 703, 440 S.E.2d at 299. Citing the Supreme Court's opinion in *Rosenblatt v. Baer*, 383 U.S. 75, 87 (1966), the court concluded that an "extension of 'public official' status beyond the duration of an official's employment is consistent with the *New York Times* policy favoring robust and open debate of public issues" and found the plaintiff was a public official, although the allegedly defamatory statements were made after his termination of employment. *Id.* Accordingly, this court rejects Plaintiff's argument that a public official's status dissolves within five days after an employment separation for purposes of analyzing a defamation claim in North Carolina. Plaintiff makes no other challenge to his status as a public official when employed as a police officer; therefore, the court will assume for purposes of this analysis that Plaintiff was a public official at the time the Form F-5B was submitted.[7]

In *Mayfield*, the Fourth Circuit found that a public official plaintiff must allege facts "suggest[ing] that [defendants] knew their statements were false or that they were reckless with respect to their veracity." 674 F.3d at 378. The court found insufficient the plaintiff's allegations that merely recited the legal standard; i.e., that the defendants' statements "were known by

[7] The cases cited by Defendants are not directly on point; the opinions in *Dellinger v. Belk*, 34 N.C. App. 488, 238 S.E.2d 788 (1977) and *Cline v. Brown*, 24 N.C. App. 209, 210 S.E.2d 446 (1974) involved allegations of defamation by members of the public against the plaintiff police officers, and the court in *Shuping v. Barber*, 89 N.C. App. 242, 365 S.E.2d 712 (1988) found the defendant police officers were public officials for a determination of whether they were entitled to governmental immunity.

19

[defendants] to be false at the time they were made, were malicious or were made with reckless disregard as to their veracity." *Id.*

In this case, Plaintiff points to his allegations in paragraphs 16, 35, and 36 of the Complaint, contending "it can be inferred from these allegations that Defendants knew the content of Plaintiff's text, or at the very least could have ascertained the content of the text, but submitted a false description of Plaintiff's statement on the Form F-5B." Resp. at 11. The paragraphs state:

16.    Detective Alan Schlitz texted Plaintiff and asked him if everything was okay. Plaintiff texted back something to the effect of "well, I haven't killed anyone yet." Upon information and belief, Detective Schlitz conveyed the text message to Plaintiff's direct supervisor, Captain Jason Hendley.

35.    On October 28, 2019, Defendants Thomas, Yarborough and Pate together drafted and prepared the content of the Form F-5B regarding Plaintiff's separation from the Sanford Police Department.

36.    On October 28, 2019, Defendants Thomas, Yarborough and Pate knew that the allegation on the Form F-SB that Plaintiff "used threatening language towards fellow employees" was false or acted with reckless disregard as to whether the allegation was true or false but submitted the form anyway to the Commission.

Compl., DE 1-1. The court finds the allegations in these paragraphs, viewed in isolation, to be similar to those rejected in *Mayfield* and, thus, insufficient to plausibly state that Defendants acted with actual malice.

However, viewing all of Plaintiff's allegations in the light most favorable to him at this stage, including that Defendants knew the charge would be seen by prospective employers and was, in fact, seen by at least one prospective employer and caused Plaintiff to be unable to find employment as a police officer (Compl. at ¶¶ 37-40), as well as the allegations concerning Plaintiff's stellar performance reviews and perceived "calm" demeanor together with the description of Plaintiff's last discussion with his supervisor, the court finds that the allegations give rise to a reasonable inference that Defendants knew the charge was false when they made it.

The circumstances surrounding the Defendants' actual knowledge and motivation—including what was specifically discussed among Plaintiff, his supervisor, and the Defendants, as well as any investigation (or lack thereof) into the text message—may (and should) be further detailed in discovery. The court finds at this early stage of the litigation, in which discovery has not yet commenced, that the Plaintiff has plausibly alleged the Defendants knew the charge arising from the text message was false or the charge was made with reckless disregard as to whether it was true or false.

### 3. *Are Defendants Entitled to a Qualified Privilege?*

In North Carolina, a "'[q]ualified privilege extends to all communications made bona fide upon any subject-matter . . . in reference to which [the communicator] has some moral or legal duty to perform.'" *Dobson v. Harris*, 352 N.C. 77, 82, 530 S.E.2d 829, 834 (2000) (quoting *Ponder v. Cobb*, 257 N.C. 281, 295, 126 S.E.2d 67, 77 (1962)). A qualified privilege "is established if the communication is made in good faith, there is an interest to be upheld, the statement is limited in scope to its purpose, the publication is directed to proper parties, and the statement was not made with malice or through excessive publication." *Brodkin v. Novant Health, Inc.*, 264 N.C. App. 6, 14, 824 S.E.2d 868, 875 (2019) (citing *Harris v. Procter & Gamble Mfg. Co.*, 102 N.C. App. 329, 331, 401 S.E.2d 849, 850–51 (1991)). "If the court determines as a matter of law that the occasion is privileged, defendant has 'a presumption that the statement was made in good faith and without malice.'" *Dobson*, 352 N.C. at 82, 530 S.E.2d at 834 (quoting *Clark v. Brown*, 99 N.C. App. 255, 262, 393 S.E.2d 134, 138 (1990)). "To rebut this presumption, the plaintiff must show actual malice." *Id.* (quoting *Phillips v. Winston–Salem/Forsyth County Bd. of Educ.*, 117 N.C. App. 274, 278, 450 S.E.2d 753, 756 (1994), *review denied*, 340 N.C. 115, 456 S.E.2d 318 (1995)); *see also Stewart v. Nation-Wide Check Corp.*, 279 N.C. 278, 283, 182 S.E.2d

21

410, 414 (1971) ("Where a qualified privilege exists, a plaintiff cannot recover absent actual malice, and the burden of proving actual malice rests on the plaintiff.") (citing *Ponder v. Cobb*, 257 N.C. 281, 126 S.E.2d 67 (1962)).

Plaintiff does not dispute that a qualified privilege has been established in this case by the Defendants' submission of the Form F-5B following his employment separation, and the court finds that Defendants meet the requirements for demonstrating the privilege. *See Bryant v. Vill. of Bald Head Island*, No. 7:14-CV-223-H, 2017 WL 1194347, at *10 (E.D.N.C. Mar. 30, 2017), *rev'd in part on other grounds*, 730 F. App'x 165 (4th Cir. 2018). Rather, Plaintiff asserts, as a "public official," that his allegations demonstrate the Defendants' actual malice in submitting the Form F-5B containing the allegedly false charge. For the same reasons set forth above, the court finds Plaintiff's allegations plausibly state the Defendants knew the charge was false or made it with reckless indifference as to its truth or falsity. Therefore, the Plaintiff has rebutted the presumption imposed by Defendants' qualified privilege and stated a plausible claim for libel per se against the Defendants. The court will deny the Defendants' motion in this respect.

## IV. Conclusion

In sum, Plaintiff states a plausible claim for violation of a clearly established procedural due process right and, as a public official, he states a plausible claim for libel per se. Therefore, Defendants' motion to dismiss is DENIED. Pursuant to the March 11, 2021 order issued by Magistrate Judge Jones, the temporary stay of discovery in this case is LIFTED.

SO ORDERED this _8th_ day of June, 2021.

Richard E. Myers II
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE

22